Entered on Docket
June 06, 2005
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: June 06, 2005

_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                     No. 04-46041 TM
                                          Chapter 13
ARTURO R. CARRASCO,

        Debtor.
_____/

**MEMORANDUM OF DECISION**

    The motion of Paul Mansdorf ("Mansdorf"), the former chapter 7 trustee in the above-captioned case before its conversion to chapter 13, to reconvert the case to chapter 7 and to require the attorney for the above-captioned debtor (the "Debtor"), Barbara A. Smart ("Smart"), to disgorge her retainer came on before the Court for an evidentiary hearing on June 3, 2005. Having heard the evidence and argument presented, the Court concludes that the case should be reconverted to chapter 7 but that the motion to disgorge should be denied. The reasons for the Court's decision are set forth below.[1]

---

[1] The Court previously issued a tentative ruling, approving the fee applications of Mansdorf and his attorneys, Stromsheim & Associates ("Stromsheim"). That ruling is now made final except

The Debtor filed a voluntary petition seeking relief under chapter 7 of the Bankruptcy Code. He failed to schedule any real property and, when asked whether he owned any real property at the 11 U.S.C. § 341 meeting of creditors, declared under oath that he did not. In fact, at that time, he and his wife were the legal owners of real property in Hayward, California (the "Hayward Property").[2]

The Hayward Property is a duplex. The Debtor obtained his interest in the Hayward Property in 1998. Title was taken in joint tenancy by the Debtor, the Debtor's wife, and the Debtor's then son-in-law, Jose Parra ("Parra"). The Debtor's daughter and Parra occupied one of the units. The Debtor and his wife occupied the other.

In or about 2000, the Debtor's daughter and Parra divorced. In 2004, Parra was removed from title but the Debtor and his wife

---

that, given the reconversion of the case, Mansdorf's fees are subject to the statutory cap. In addition, although not listed on the calendar, a status conference on Mansdorf's adversary proceeding objecting to the Debtor's discharge had been continued to the June 3, 2005 hearing date. Mansdorf is directed to contact the Court's calendar clerk promptly to reschedule this status conference.

[2]Mansdorf filed a complaint seeking to sell the Hayward Property as co-owned property pursuant to 11 U.S.C. § 363(h). Neither the Debtor nor his wife responded to the complaint, and Mansdorf obtained a judgment. However, on or about January 18, 2005, they executed a grant deed transferring the Debtor's interest in the Hayward Property to the Debtor's wife as her separate property. Since then, the Debtor's daughter has advised Mansdorf that the Debtor's wife obtained approximately $24,000 by refinancing the secured debt on the Hayward Property.

2

were not. The Debtor's daughter has since remarried and lives in one of the duplex units with her new husband. However, neither the Debtor's daughter nor her new husband has ever been placed on title.

Before the case was converted, the Debtor's daughter negotiated a settlement with Mansdorf, ostensibly on behalf of the Debtor, providing that the estate would receive $50,000 in return for an abandonment of the Hayward Property and dismissal of a complaint filed by the Mansdorf seeking to deny the Debtor's discharge. Any funds remaining after claims and administrative expenses were paid would be paid to the Debtor. However, when notice of the proposed compromise was sent with an opportunity to request a hearing, the Debtor filed an objection to the proposed compromise and a motion to convert the case to chapter 13.

At the hearing on the motion to reconvert the case, the Debtor and the Debtor's daughter both testified under oath that the Debtor had never held any equitable interest in the Hayward Property. They both stated that neither he nor his wife contributed to the down payment for the Hayward Property or to any of the monthly mortgage payments. The Debtor's daughter testified that she had included her mother on title because her mother had better credit. She claimed that the title company told her that, if her mother was on title, her father had to be too. No documents were provided to support these statements.

The Court finds the evidence insufficient to establish that the Debtor does not hold an equitable interest in the Hayward

3

Property. California law creates a rebuttable presumption that equitable ownership of real property is consistent with legal title. This presumption can only be overcome with clear and convincing evidence. Cal. Evidence Code § 662; <u>Schindler v. Schindler</u>, 126 Cal. App. 2d 597, 601-02 (1954).[3] The evidence presented was neither clear nor convincing.

In particular, the series of deeds executed is at variance with the story told by the Debtor and his daughter. If the only equitable owner of the Hayward Property has always been the Debtor's daughter (and one or other of her husbands), it makes no sense that, in 2004, when Parra was removed from title, the Debtor's daughter was not placed on title. It makes even less sense that, in January 2005, when the Debtor attempted to remove himself from title, he transferred his interest in the Hayward Property to his wife, not to his daughter.[4]

---

[3] <u>See</u> <u>Weaver v. Weaver</u>, 224 Cal. App. 3d 478, 487 (1990), quoting from <u>Sheean v. Sullivan</u>, 126 Cal. 189, 193 (1899), (describing the "clear and convincing" standard as requiring evidence that is "'sufficiently strong to command the unhesitating assent of every reasonable mind.'")

[4] Several people referred to the Debtor as "slow." The Court did not perceive the Debtor to be "slow." Although relatively unsophisticated, the Debtor did not seem lacking in intelligence or to be mentally impaired in any way. His primary language is Spanish and, at the hearing, he used a translator. However, the Debtor's bankruptcy attorney communicated with him in Spanish when he prepared the schedules. At the hearing, the Debtor's chapter 7 attorney testified that he asked the Debtor whether he owned any real property and that the Debtor said that his wife owned real property but that it had always been her separate property. This is at odds with the story presented currently.

4

Given the Court's assessment that the Debtor has not only failed to schedule real property in which he owns an interest and has more recently lied under oath about his interest in that real property, the Court does not believe that the Debtor is a good candidate for chapter 13. The Debtor has proposed a plan to pay his creditors in full over 58 months at the rate of $900 per month.[5] However, the equity in the Hayward Property appears to be sufficient to pay creditors in full in short order. Alternatively, the Debtor may choose to withdraw his objection to the compromise and permit the Trustee to use whatever portion of the $45,000 currently held to pay creditors. Mansdorf is directed to confer with the Debtor to determine his preference after the claims bar date has passed.

However, Mansdorf's motion for an order requiring Smart to disgorge the $2,500 retainer obtained in connection with her representation of the Debtor will be denied. She has obviously expended at least this much obtaining conversion of the case to chapter 13 and defending the motion to reconvert. The facts of this case were not so clear cut that Smart had an ethical duty to refuse to represent the Debtor in the conversion or in defending

---

[5] The Debtor now represents that the bulk of his income comes from disability payments. The Debtor also failed to schedule these payments. He blames this omission on his bankruptcy attorney. His attorney testified that the Debtor told him that his disability payments had been terminated. The Court believed the Debtor's attorney and did not believe the Debtor's claim that he had told his attorney that he received disability payments.

5

the motion to reconvert.  To require her fees to be disgorged simply because her efforts were unsuccessful would be unfair and would have a chilling effect on her desire to represent deserving debtors in the future.

**CONCLUSION**

Mansdorf is directed to submit a proposed form of order, granting the motion to reconvert the case to chapter 7, denying the motion to disgorge, and granting the fee applications (subject to Mansdorf's statutory cap).

END OF DOCUMENT

6

COURT SERVICE LIST

Elizabeth Murphy
Stromsheim & Associates
353 Sacramento St., Ste. 860
San Francisco, CA 94111

Howard L. Hibbard
Law Offices of Howard L. Hibbard
22693 Hesperian Blvd., #210
Hayward, CA 94541

Barbara A. Smart
Smart Legal Services
22693 Hesperian Blvd., #210
Hayward, CA 94541